**Debbie Ann Cowart MASON, as Administrator of the Estate of Joseph Merrill Mason**

v.

**SHELBY COUNTY HEALTH CARE CORPORATION d/b/a The Regional Medical Center at Memphis and Elvis Presley Memorial Trauma Center, and Dr. Timothy Gavin, M.D.**

**No. 3:95CV717LN.**

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 8, 1996.

---

D. Elizabeth Featherston, Jackson, MS, for plaintiff.

Stephen P. Kruger, Stuart B. Harmon, Upshaw, Williams, Biggers, Page & Kruger, Jackson, MS, Heber S. Simmons, III, Armstrong, Allen, Prewitt, Gentry, Johnson & Holmes, Jackson, MS, George Q. Evans, Wise, Carter, Child & Carawa, Jackson, MS, for defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Timothy Gavin, M.D., to dismiss for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. Plaintiff Debbie Ann Cowart Mason has responded to the motion and the court, having considered the memoranda of authorities together with attachments submitted by the parties, concludes that this court is without personal jurisdiction over defendant Gavin and that therefore, his motion is well taken and should be granted.

As recounted in an earlier opinion entered by the court in this cause, plaintiff's decedent, Joseph Merrill Mason, was involved in a train/truck collision in Holmes County, Mississippi on September 28, 1994. He was initially transported to and treated at the emergency room of the Methodist Hospital in Lexington, Mississippi. However, the treating physician there, Dr. Aubrey Hinton, sought to transfer him to Shelby County

Health Care Corporation and/or Elvis Presley Memorial Hospital Trauma Center and/or the Regional Medical Center at Memphis (the Med) in Memphis, Tennessee.[1] Toward that end, Dr. Hinton spoke with Dr. Timothy Gavin, an emergency room physician at the Med, who agreed to accept the transfer of Mason. A helicopter was dispatched to Mississippi to pick up Mason and transport him to the Med, accompanied by two registered nurses, defendants Charlotte Heidi and Kathleen Storey. Plaintiff alleges in the complaint in this cause that these two nurses, after consulting with Dr. Gavin by phone from Lexington, administered the drug Tracrium to Mr. Mason. She alleges that this drug was inappropriate under the circumstances and ultimately caused Mason's death.

On the present motion, defendant Gavin challenges this court's jurisdiction over him under both prongs of the usual jurisdictional inquiry. That is, he maintains both that he does not have the requisite "minimum contacts" with Mississippi to satisfy due process notions of "fair play and substantial justice," *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and that he committed no tort in Mississippi so that he is not amenable to service of process under this state's long-arm statute, Miss.Code Ann. § 13-3-57. Further, on the same reasoning that he committed no tort here, Gavin asserts that this forum is not a proper venue for this action. *See* 28 U.S.C. § 1391(a). Finally, he argues that even if the court were to conclude that it has personal jurisdiction over him and that this is an appropriate venue, he would still be entitled to dismissal for the reason that he was a University of Tennessee medical resident at the time of the events giving rise to this cause and thus enjoys immunity from suit under the Eleventh Amendment. To resolve this motion, the court finds it necessary to address only the first of Gavin's arguments, relating to due process.

■ Before a court may exercise jurisdiction over the person of a nonresident defendant consistent with due process, that defendant must have "minimum contacts" with the forum state and the "maintenance of the suit [must] not offend 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 105, 107 S.Ct. 1026, 1029, 94 L.Ed.2d 92 (1987). This means that before this court may exert jurisdiction over Dr. Gavin, it is essential that the plaintiff identify some act or acts by which he purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See Hanson v. Denckla,* 357 U.S. 235, 250-53, 78 S.Ct. 1228, 1238-40, 2 L.Ed.2d 1283 (1958).

■ There is no contention here that Gavin had "sufficient systematic and continuous" contacts with Mississippi to support an exercise of "general" jurisdiction. In fact, as detailed *infra,* the only contacts identified are communications relating to plaintiff's decedent. Thus, the issue is whether the court may exercise "specific jurisdiction," or "personal jurisdiction based on contacts with the forum that are related to the particular controversy." *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir.1988). Of course, for specific jurisdiction, the defendant must have "minimum contacts" with the forum state, but the standard for gauging the sufficiency of contacts is lower for a specific jurisdictional inquiry than for an inquiry into the existence of general jurisdiction. Indeed, when the cause of action arises from the contact, i.e., for specific jurisdiction, "[e]ven a single purposeful contact may in a proper case be sufficient to meet the requirement of minimum contacts." *Id.; see also Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1028 (5th Cir.1983) ("jurisdiction over the person of a defendant may be predicated on a single purposeful act of the defendant"). Here, plaintiff asserts that Dr. Gavin undeniably purposefully sought to invoke the benefits and protections of Mississippi law "[b]y undertaking to provide medical care and thus practicing medicine in Mississippi." However, the court concludes that his con-

---

1. In a motion to dismiss filed earlier by the Med, it was explained that Shelby County Health Care Corporation operates the Elvis Presley Memorial Hospital Trauma Center and the Regional Medical Center at Memphis as divisions.

tacts with Mississippi are plainly insufficient to satisfy the minimum contacts requirement.[2]

It is undisputed that Gavin's only contacts with Mississippi were telephone conversations with health care providers in Mississippi concerning Joseph Mason. More particularly, the record reflects that Gavin participated in four telephone calls from Mississippi regarding Mason.[3] The first was from Dr. Aubrey Hinton at the Methodist Hospital in Lexington, Mississippi, asking that Mason be accepted for transfer. In that conversation, Gavin discussed the patient's condition with Dr. Hinton and agreed to accept the transfer. The second call to Dr. Gavin was also from Dr. Hinton, who called to "reiterate" certain information about Mason's condition. In the third, nurse Charlotte Heidi telephoned Dr. Gavin from the hospital in Lexington to advise that they were preparing for the return flight and to "let [Gavin] know what [was] going on and how bad [Mason] look[ed]." The fourth call to Dr. Gavin was from a Dr. John Lucas, the general surgeon at Greenwood–LeFlore Hospital in Greenwood, Mississippi, who telephoned Dr. Gavin to discuss Mr. Mason's condition after Mr. Mason went into full cardiac arrest during the return flight and an emergency landing was made at the Greenwood hospital for assistance. At no time did Gavin himself initiate any contact with anyone in Mississippi about Mr. Mason or about his case. Rather, he merely *received* these four calls from others in Mississippi concerning Mr. Mason.

While a single contact can be a sufficient basis upon which to predicate specific jurisdiction, that single contact must be "purposeful," and directed at the forum. *See Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir.1990); *Hydrokinetics*, 700 F.2d at 1028. The court in *Bullion* observed:

It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum. The appropriate inquiry is whether the defendant purposefully availed [himself] of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws.

*Bullion*, 895 F.2d at 217. From this, it follows that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hydrokinetics*, 700 F.2d at 1028. On this reasoning, the Fifth Circuit has held specifically "[t]elephone calls made from the forum state to the nonresident defendant represent an insufficient basis for the forum's assertion of jurisdiction over the nonresident." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1171 (5th Cir.1985); *cf. Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333 (5th Cir.1982) (upholding Mississippi district court's assertion of jurisdiction over nonresident on basis of single telephone call placed by the nonresident to the Mississippi plaintiff).[4]

In the case at bar, plaintiff relies heavily on the Fifth Circuit's opinion in *Bullion v. Gillespie*, 895 F.2d 213 (5th Cir.1990), for her contention that Dr. Gavin's contacts with

2. If the court were to conclude that minimum contacts did exist, the court would then reach the fairness prong of the specific jurisdiction inquiry, which requires that it "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir.1988). Since the court concludes here that the minimum contacts requirement is not met, the court does not consider the fairness issues.

3. Both parties have provided the court with transcripts of twelve telephone calls from Mississippi to the Med in Memphis about plaintiff's dece-

dent. Dr. Gavin participated in only four of those calls. It is noted, as well, that while the parties have represented that these transcripts represent all of the conversations with Dr. Gavin concerning Mr. Mason, these transcripts do not reflect that Dr. Gavin advised or participated in the decision to administer Tracrium to plaintiff's decedent.

4. The *Thompson* court distinguished *Brown* on the very basis that the telephone call in *Brown* was made *to* Mississippi whereas the telephone call in *Thompson* was made *from* Mississippi. *Thompson*, 755 F.2d at 1171.

Mississippi amount to such purposeful availment as would support jurisdiction. *Bullion,* though, is obviously significantly distinguishable. In finding that the Texas plaintiff there had made a prima facie showing of jurisdiction over the nonresident physician, the *Brown* court did rely, in part, on the plaintiff's assertion that a physician/patient relationship had been established between the plaintiff and the physician. However, there were substantial other factors contributing to the court's ruling, most notably the facts that the nonresident physician had *shipped drugs to the plaintiff from California to Texas* on three occasions, for which he had received payment from the plaintiff, and had maintained "regular" telephone contact with plaintiff's Texas physician about her condition.[5] Given these apparent distinctions, *Bullion* adds nothing to plaintiff's position.

█ In the case at bar, the court recognizes that plaintiff is not seeking to hold Dr. Gavin liable for answering the phone but rather for undertaking to provide what she

contends is negligent medical care.[6] For jurisdictional purposes, though, and apart from the *merits* of this claim, what is relevant to the court is the fact that Dr. Gavin never initiated any contact whatsoever with Mississippi that could potentially subject him to jurisdiction in this forum. Rather, he merely *received* a limited number of phone calls from persons in Mississippi. Such unilateral activity by others is insufficient to support this court's exercise of jurisdiction. Accordingly, this court will grant Gavin's motion to dismiss for lack of personal jurisdiction.[7]

It is, therefore, ordered that defendant Gavin's motion to dismiss for lack of personal jurisdiction is granted.

---

5. In *Bullion,* a Texas resident filed suit in Texas against Gillespie, a California physician, charging medical malpractice and deceptive trade practices relating to his having provided her with certain experimental drugs to treat a condition from which Bullion suffered. Bullion had learned of Gillespie's work with her particular ailment from her local physician, Reeves, who had read a book authored by Gillespie on the subject. Reeves communicated with Gillespie to discuss Bullion's problem and the two developed a professional relationship. Upon Reeves' referral, Bullion went to California for a consultation with Gillespie, and was invited by Gillespie to participate in an experimental treatment program which he was administering. She agreed and returned to Texas. As part of the program, Gillespie mailed the drug "angiostat" and some related correspondence to Bullion in Texas on three separate occasions. Bullion continued to see Reeves, who agreed to supervise her progress and report his findings to Gillespie in California. For her part, Bullion made a series of payments to Gillespie for medical services and drugs received.

Under those facts, the Fifth Circuit concluded that Bullion had presented a prima facie case for personal jurisdiction over Gillespie. The court said,

We must accept as true Bullion's assertion that Gillespie shipped to her, in Texas, drugs that proximately caused her injuries. Moreover, . . . Bullion was Gillespie's patient for purposes of the experimental program and . . . Gillespie

received compensation for her services. . . . Gillespie maintained regular telephone contact with Reeves and administered to the medical needs of other patients in Texas as well. Thus, aggregating these separate contacts with Texas, we conclude that personal jurisdiction over the defendant comports with the due process requirement of "minimum contacts."

*Bullion,* 895 F.2d at 217.

6. In her brief, plaintiff remarks that she does not attempt to hold him liable for answering the phone and that "Gavin was not on duty as a receptionist but as a physician."

7. Because the court concludes that Gavin's contacts do not satisfy the due process requirements for jurisdiction, the court need not address whether his alleged acts amounted to the commission of a tort in part in Mississippi so as to satisfy Mississippi's long-arm statute. The court does note that in its earlier opinion concluding that plaintiff had made a prima facie showing of jurisdiction over the Med, the court did not specifically confront and address this issue because the Med never contended that Dr. Gavin did not commit a tort in Mississippi. In that motion, the Med impliedly conceded that plaintiff had alleged the commission of a tort in Mississippi and the only issue for the court was whether Dr. Gavin was the Med's agent. The issue of whether he committed a tort in Mississippi was never directly placed before the court.